COLLOTON, Circuit Judge,
concurring in the judgment in part and dissenting in part.
The collective bargaining agreement between the parties to this case provides that “[a]ny dispute over the interpretation or application of this Agreement, or other agreements made between Management and employees which can be verified, shall be settled through the grievance procedure” set forth in the CBA. One such “other agreement” is the Last Chance Agreement (“LCA”) between Leo Johnson and Associated Electric Cooperative, Inc. Therefore, when a dispute arose over the interpretation and application of the LCA, the matter was submitted to an arbitrator in accordance with the grievance procedure.
The arbitrator concluded that the LCA was “clearly unconscionable,” defining unconscionability as “an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.” The arbitrator observed that “the manner in which a contract was entered into may well nullify the contract,” and found that because Johnson had not violated any work rule, “the company had no justification” for presenting Johnson with “an entire page full of command[ments] in the plant manager’s office.” For these reasons, the arbitrator ruled that the LCA was “void,” and that Johnson’s suspension and discharge should be evaluated under the “just cause” limitation that applies to discipline and discharge of employees under the CBA.
Under the limited scope of judicial review, the arbitrator’s decision should be upheld. The issue of the LCA’s unconscionability, and thus its validity, should be decided by an arbitrator and not by this court. It is not for this court to substitute its view that the LCA was “not ‘unconscionable.’ ” Ante, at 901-02. Once the arbitrator declared invalid the LCA and its mandatory termination provision, the arbitrator permissibly determined that there was no “just cause” for Johnson’s discharge. The arbitrator’s award should thus be confirmed.
The first step of the arbitrator’s analysis was a conclusion that the LCA was unconscionable and thus invalid. In the frequently analogous context of commercial arbitration governed by the Federal Arbi *905 tration Act, it is well established that a challenge to the validity of an agreement (other than the agreement to arbitrate) is a matter for the arbitrator, not for a court, unless there is clear evidence that the parties intended to withhold the issue of validity from arbitration. The Court established this rule of separability between challenges to the validity of the agreement to arbitrate itself and challenges to the validity of the underlying agreement or other agreements in Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 406, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and reiterated it in Southland Corp. v. Keating, 465 U.S. 1, 11, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444-45, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), and Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 130 S.Ct. 2772, 2779-81, 177 L.Ed.2d 403 (2010). This court recognized the rule in Houlihan v. Offer-man & Co., 31 F.3d 692, 695 (8th Cir.1994): “[A] claim of fraud in the inducement of the contract generally, because it does not go to the ‘making and performance of the agreement to arbitrate,’ is properly left to arbitration.” See also JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 170 (2d Cir.2004) (“Claims of unconscionability and adhesion contracts are similarly included within the Prima Paint rule.”) (internal quotation omitted).
The FAA does not apply directly to this labor arbitration, but “federal courts have often looked to the Act for guidance in labor arbitration cases, especially in the wake of the holding that § 301 of the Labor Management Relations Act [of] 1947 empowers the federal courts to fashion rules of federal common law to govern ‘[s]uits for violations of contracts between an employer and a labor organization’ under the federal labor laws.” United Paperworkers Int’l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 40 n. 9, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (internal citation omitted). Precedents applying the FAA “employ the same rules of arbitrability that govern labor cases.” Granite Rock Co. v. Int’l Bhd. of Teamsters, 561 U.S. 287, 130 S.Ct. 2847, 2857 n. 6, 177 L.Ed.2d 567 (2010). Not surprisingly, therefore, the Eleventh Circuit in the labor arbitration case of Mulhall v. UNITE HERE Local 355, 618 F.3d 1279 (11th Cir.2010), deemed it highly likely that disputes over the validity of an agreement between union and employer were to be decided by the arbitrator charged with determining disputes over “the interpretation or application of’ that agreement. Id. at 1292-93. The Third Circuit similarly held that a laborer’s claim that a collective bargaining agreement was unenforceable due to expiration was analogous to a claim challenging a contract’s validity, and was thus a matter for the arbitrator rather than a court. N.J. Bldg. Laborers Statewide Benefits Fund v. Am. Coring & Supply, 341 Fed.Appx. 816, 820 (3d Cir.2009); see also Int’l Union of Operating Eng’rs, Local Union No. 139 v. Carl A. Morse, Inc., 529 F.2d 574, 578 (7th Cir.1976) (recounting authority of federal courts to fashion federal common law under the LMRA, and concluding that “[u]nder this judge-made law as well as under the terms of the Arbitration Act, the principle of separability carries equal force”). Indeed, in Shop ’N Save Warehouse Foods, Inc. v. United Food and Commercial Workers International Union, Local No. 88, 61 F.3d 632 (8th Cir.1995), which the court deems “analogous” to this case, ante, at 902-03, it was the arbitrator, not a court, who decided that a last chance agreement had not been consummated and thus did not govern the relationship between employer and employee. Id. at 635.
The dispute over the unconscionability of Johnson’s LCA is subject to arbitration “unless it may be said with positive assurance that the arbitration clause is not sus *906 ceptible of an interpretation that covers the asserted dispute,” with any doubts about arbitrability resolved “in favor of coverage.” AT & T Techs., Inc. v. Commc’ns Workers of Am., 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The issue submitted to the arbitrator here — “Was the employer justified in discharging the grievant for violating the terms of a last chance agreement?” — was broad enough to encompass the antecedent question whether the LCA was valid in the first place. See Mulhall, 618 F.3d at 1292-93; ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 33-34 (2d Cir.2002) (agreement to arbitrate disputes “with reference to the interpretation” of the agreement or “with respect to any transaction involved” encompassed claim of fraudulent inducement of the contract generally). The arbitrator thus had authority to determine the validity of the LCA between Johnson and Associated Electric, and a federal court must defer to the arbitrator’s determination as long as the award is not merely the arbitrator’s “own brand of industrial justice.” Misco, 484 U.S. at 36, 108 S.Ct. 364. Even serious error by an arbitrator acting within his authority does not suffice to overturn his decision. Id. at 38, 108 S.Ct. 364.
This arbitrator’s determination of unconscionability is debatable, but the parties bargained for the arbitrator’s judgment. The court’s eonclusory assertion that the LCA was not unconscionable when Johnson and the company entered into it, ante, at 901-02, is not sufficient to justify disregarding the arbitrator’s decision on that point — especially when the court later relies on the arbitrator’s unconscionability rationale that Johnson violated no work rule to conclude that the LCA is unenforceable based on a “mutual mistake.” Ante, at 903.
For these reasons, the arbitrator permissibly looked beyond the mandatory termination clause of the LCA to consider whether there was “just cause” for Johnson’s discharge. Like the court, ante, at 902-04, I conclude that the arbitrator’s determination that there was no “just cause” for termination must be upheld. The arbitrator’s award should thus be confirmed. Associated Electric raised no separate challenge in the district court or in this court to the arbitrator’s award of back pay for the dates between Johnson’s suspension and discharge, so that issue is waived. In any event, the first issue submitted to the arbitrator raised the validity of the Last Chance Agreement and the second issue asked broadly “what should be the remedy” if the employer was not justified in discharging Johnson for violating the LCA. The suspension was premised on the same alleged misconduct that the company cited to justify the LCA. The arbitrator, having found that the LCA was unconscionable and thus invalid, at least arguably acted within the scope of the submission by including a remedy for a suspension that was tied to the LCA. See generally Lackawanna Leather Co. v. United Food & Commercial Workers Int’l Union, 706 F.2d 228, 232 (8th Cir.1983); cf. John Morrell & Co. v. Local Union 304A of United Food and Commercial Workers, 913 F.2d 544, 561 (8th Cir.1990) (vacating award where arbitrator was not “even arguably” acting within the scope of the issue submitted).
The company’s purported victory in gaining rejection of the arbitrator’s unconscionability determination may well be Pyrrhic, because the court ultimately rules against the company in part on a broader ground. Concluding that “the Union did not agree to the LCA between Johnson and AECI,” ante, at 902, the court suggests that a last chance agreement is not enforceable by the employer when an em *907 ployee waives union representation at the time of the agreement — a broad and unsettled proposition that this arbitrator declined to adopt. See R. Doc. 1-1, Arb. Dec. at 8; cf. Foss Steel Emps. Union v. Foss Steel Corp., No. 92-2068, 16 F.3d 1223, 1994 WL 28610, at *5 (6th Cir. Jan. 31, 1994) (rejecting union’s claim that a last chance agreement was invalid because the union representative did not sign it). Although the court says that an arbitrator cannot “ignore” a last chance agreement signed only by an employer and employee, as a practical matter the court requires the arbitrator to ignore the LCA’s termination provision and apply the “just cause” standard of the CBA as though there were no LCA. It is unnecessary here to reach difficult questions about waiver of union representation. The arbitrator’s award should be sustained as permissible on the narrower grounds set forth in the arbitral decision.